Larry Cornell JOHNSON,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–9210–CR–338.

Court of Appeals of Indiana,
First District.

July 19, 1993.

Verdelski V. Miller, Evansville, for appellant-defendant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Larry Cornell Johnson appeals his conviction of dealing in marijuana, a class D felony, and the adjudication that he is an habitual offender.

We affirm.

Johnson states the issues in this appeal as:

(1) whether, in the habitual offender proceeding, the State proved that he had been convicted of the underlying cause for which the enhancement had been sought;

(2) whether there was sufficient evidence for the jury to convict Johnson of constructive possession of over 30 grams of marijuana;

(3) whether the trial court erred in refusing to grant Johnson's motion for mistrial when testimony was introduced by the State that a witness had met Johnson while in prison; and

(4) whether the trial court erred in denying Johnson's motion to suppress which questioned whether police had probable

cause to stop Johnson and whether the warrantless searches of his person and automobile were legal.

## I.

After his conviction of the class D felony, Johnson expressed his desire not to be present during the habitual offender phase of his trial. Johnson was brought into court wearing jail clothes and handcuffs, the jury viewed him in restraint, and Johnson moved for a mistrial. His motion for mistrial was granted. A few days later, the court impaneled a second jury which thereafter heard evidence and found Johnson to be an habitual offender. Johnson maintains that his conviction of the underlying offense is a necessary element of the State's proof when an adjudication of habitual offender is made by a jury other than the one which tried the underlying offense.

Indiana Code 35–50–2–8 provides in relevant part:

> (a) The state may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions. .
>
> (b) After a person has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony conviction, the person has accumulated two (2) prior unrelated felony convictions. . . .

This section does not expressly require proof of a third felony conviction. It provides that the State may seek to have a person sentenced as an habitual offender for a felony by alleging and proving two prior unrelated felony convictions. The courts of this state have construed this provision to require proof that the second offense was committed after conviction and sentencing on the first and that the principal offense was committed after conviction and sentencing on the second. *State v. Brooke* (1991), Ind., 565 N.E.2d 754, 756. Proof of the date of commission of the felony for which enhancement has been sought is required if a different jury hears the habitual part of the trial, *Smith v. State* (1989), Ind., 543 N.E.2d 634, 636, but proof of conviction of the principal offense is not required, even when a second jury is impaneled. *Gilliam v. State* (1990), Ind., 563 N.E.2d 94. A trial judge cannot lawfully render a sentence upon a defendant's status as an habitual offender without the conviction of the primary underlying felony but once the issue has been decided, it becomes the law of the case and is outside of the realm of the second assembled jury. *Id.* at 96.

The date upon which an offense may have been committed may be found in the State's charging instruments, in transcripts of guilty plea proceedings, within the evidence admitted at trial and in the jury instructions given by the court. The date of commission is not part of the fact of a prior conviction, the proof of which is restricted to authenticated documents. *Beavers v. State* (1991), Ind., 566 N.E.2d 533, 535.

The record reflects that the State introduced into evidence the information by which it charged the underlying offense. That document alleges with particularity that the principal offense was committed on October 12, 1991. Johnson does not find any other error in the State's proof of the two prior unrelated felonies or the sequence of commission, conviction and sentence. Accordingly, we conclude that proof of the date of commission by admitting the charging information into evidence suffices to establish the date of commission of the principal offense upon which enhancement has been sought; proof of conviction of the principal offense is not required.

## II.

Johnson contends that there was insufficient evidence to place him in constructive possession of the marijuana found in the glove compartment of his car. The marijuana found in the glove compartment weighed more than thirty grams and was the basis of the class D felony possession charge. Johnson had only .07 grams of marijuana on his person.

A conviction of illegal possession of marijuana may be based upon evidence that the marijuana, while not found on the person of the defendant, was in a place under his dominion and control. *Thomas v. State* (1973), 260 Ind. 1, 291 N.E.2d 557, 559. The requisite intent may be inferred from the voluntary commission of the act. *Id.*

Possession need not be exclusive; the substance can be possessed jointly by the defendant and another without any showing that the defendant had actual physical control thereof, *id.;* but, when possession is not exclusive, it must be shown that the accused had actual knowledge of the presence and illegal character of the substance. *Corrao v. State* (1972), 154 Ind.App. 525, 290 N.E.2d 484, 487. The inference of intent must be supported by additional circumstances pointing to the accused's knowledge of the nature of the substance and its presence. *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486, 490. Joint possession cannot be established by the fact the defendant is or has been in the company of one having possession of the substance in the absence of some additional evidence linking the defendant with it. *Corrao*, 290 N.E.2d at 487.

Thus, in *Corrao*, this court affirmed the convictions of the driver of the vehicle and its owner, who was a passenger in the car, upon evidence that each of them was in constructive possession of marijuana stored in bags in the trunk of the car. Both the driver and the owner of the vehicle had the ability to exercise control or dominion over the vehicle in which the marijuana was found, and there was evidence from which their knowledge of the marijuana's presence and illegal nature could be inferred; the smell of marijuana was emanating from the passenger compartment of the vehicle after it had been stopped.

Here, Johnson had the ability to exercise dominion and control over the marijuana found in the glove compartment of his car. Not only was Johnson the owner of the vehicle, he was also its operator and possessed the keys.

Presumably, when the officers searched Johnson's car, the glove compartment was not locked. It was thus necessary for the State to produce some additional evidence from which it could be inferred that Johnson knew of the presence of the contraband and its illegal character. The State met this burden by introducing evidence that at the time the marijuana was seized, Johnson had a small amount on his person. In addition, Johnson's passenger testified that earlier in the evening, Johnson, his passenger, and a female companion had smoked some marijuana, which the passenger stated came from the bag recovered from Johnson's person. The evidence is thus indistinguishable from that found to be sufficient in *Corrao* to permit the inference that Johnson both knew of the presence of the marijuana in his glove compartment and knew of its illegal character. Inasmuch as Johnson also had the capability to exercise dominion and control over the substance because of his ownership and operation of the vehicle, we conclude that the evidence was sufficient to sustain the verdict.

### III.

Johnson next argues that the trial court committed reversible error by refusing to grant his motion for mistrial which was made during the State's presentation of rebuttal evidence. The passenger in Johnson's vehicle, Jimmy Merritte, who had that day been released from prison, testified for Johnson that he knew Johnson "through mutual friends." On cross-examination, the prosecutor asked Merritte when he met Johnson for the first time. Merritte stated that he met Johnson for the first time on October 11, 1991, but had seen him before in pictures sent to him by his girlfriend while Merritte was in prison. Merritte also testified that he had met Johnson through some female acquaintances.

The prosecutor pursued this line of questioning for some time, trying to show the inconsistency between Merritte's testimony during an earlier interview conducted by the State and his in-court testimony and discrepancies with testimony expected to be elicited from Merritte's girlfriend.

Then, after the defense had rested, the State called an investigator who had been present a few days before when the prosecutor had interviewed Merritte. The witness recounted that Merritte had said two days before that he knew Johnson "from being in prison" and that he had met him earlier through a girlfriend, the point being that when Merritte testified that he had met Johnson for the first time on the day preceding the arrest, Merritte was not telling the truth.

Johnson's attorney voiced no objection and specifically asked the witness to repeat what he had said. He then moved for a mistrial and argued that the State had intentionally elicited testimony tending to show that Johnson himself had served time in prison. The court denied the motion on the ground that the witness did not say that Merritte had said he had met Johnson when Johnson was in prison but that, in the context of Merritte's earlier testimony, the inference was that he had met Johnson as a consequence of Merritte's having been in prison. This is a fair assessment of the evidence. Merritte had said that while he was in prison he became involved in a pen pal group and had met his girlfriend through that group. The girlfriend had sent him pictures of Johnson.

A mistrial is an extreme remedy which is warranted only when a defendant has been placed in a position of grave peril to which he should not have been subjected. *Taylor v. State* (1992), Ind., 587 N.E.2d 1293, 1299. The trial court's ruling upon a motion for mistrial is accorded great deference on appeal because the trial judge is in the best position to gauge the circumstances surrounding the event and its probable impact on the jury. *Id.* The defendant has the burden of showing no action other than a mistrial could have remedied the perilous situation in which he was placed. *Kelley v. State* (1990), Ind., 555 N.E.2d 140, 141.

We agree with the trial court that Johnson was not placed in grave peril by the testimony. The chance that the jury drew an unfavorable inference from the statement about Johnson is remote at best

given the statement's ambiguous nature and the nature of the testimony which preceded it. Johnson has not shown that he was entitled to the remedy of a mistrial.

## IV.

Johnson challenges the warrantless seizure and search of his person and automobile which produced the evidentiary basis for his conviction of possession with the intent to deliver greater than 30 grams of marijuana. He maintains that the officers did not have probable cause to stop and search him. Moreover, he contends that the search of his vehicle cannot be justified as an inventory search.

During the early evening hours of October 11, 1991, police received word from a confidential informant that "Dukie" Johnson would be transporting narcotics in his vehicle, a brown Jaguar, that evening in a particular area of town. The informant told the officer that if they did not find the narcotics in Johnson's vehicle, they should look down his pants. The officer who received the information knew Johnson personally, having had arrested Johnson for a narcotics violation early in his career as a police officer. The officer had been receiving reports regularly from a sheriff's deputy who had been gathering information in his off-duty capacity as a security officer for the Ramada Inn that a person who had been identified by police as Johnson had been coming into a near-by gas station to have work done on his car. The individual had displayed large amounts of cash, had represented that he would be taking long trips, and had expressed concern about his car's road-worthiness.

Based upon the specific information received from the informant on the evening of October 11, 1991, the officer issued a "BOL," i.e. a "Be on the Lookout," for Johnson. Johnson was stopped in the area identified by the informant. Johnson had not committed any traffic infractions or violations in the presence of the officers when he was stopped.

Johnson immediately exited his vehicle and approached the police officers. A

crowd began to gather. The officers first asked Johnson for identification and then told him that they had probable cause to believe he was transporting narcotics. Johnson asked if they were going to look down his pants. The officers said that they were but did not have to do it there, handcuffed Johnson, placed him in the police car, and transported him to a safer area approximately three blocks away where they conducted a "pat-down" search of his person and required Johnson to open his pants. The officers found a small amount of marijuana in the waistband of Johnson's trousers.

Meanwhile, officers at the car had removed Johnson's passenger, had arrested him, and searched Johnson's vehicle. They recovered a substantially larger quantity of marijuana from the glove compartment than they did from Johnson's person, better than thirty grams.

■ The Fourth Amendment to the federal Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The guarantee means that searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions. *Minnesota v. Dickerson* (1993), —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334.

■ Without question, Johnson had been seized within the meaning of the Constitution when the police officers stopped his vehicle and physically restrained him. A seizure occurs when an individual, whether in response to the application of physical force or a show of authority, yields or submits. *California v. Hodari D.* (1991), —— U.S. ——, ——, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690. Stopping an automobile and detaining its occupants constitute a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse* (1979), 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660. Hence, Johnson's

Fourth Amendment rights were implicated and the State must justify the seizure.

■ In *Terry v. Ohio* (1968), 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, the Supreme Court recognized one exception to the requirement of prior judicial authorization and held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity "may be afoot," even if the officer lacks probable cause. *U.S. v. Sokolow* (1989), 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1. An informant's tip may provide the reasonable suspicion necessary for a *Terry*-type stop. *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301.

Thus, in *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, the Supreme Court held that, while the informant's unverified tip that an individual in a nearby car was carrying narcotics and had a gun at his waist, may have been insufficient for a narcotics arrest or search warrant, the tip, which was immediately verifiable and provided by an individual who was subject to criminal penalties for making a false report, who was known by the officer personally, and who had provided information in the past, carried enough indicia of reliability to justify the officer's forcible, investigatory stop and subsequent pat-down search of Williams. 407 U.S. at 148, 92 S.Ct. at 1924.

■■ So it is, at least with respect to the stop of Johnson. The officer who issued the BOL for Johnson received information sometime between the hours of 3:00 and 11:00 p.m. from an individual known to him, who had provided information over the past five years, that Johnson would be in his car in a particular area of town that night, transporting narcotics. Johnson's prior involvement with narcotics was known by the officer and recent observations of Johnson by another police officer at a gas station fueled the suspicion that Johnson was again involved with narcotics: Johnson had been seen on more than one occasion displaying large amounts of cash and had represented that he would be mak-

ing long trips for which he needed a trustworthy vehicle. Whether Johnson was in fact in his vehicle in the named area on that evening was readily verifiable: within a few hours, Johnson was observed in the area designated by the informant in the car identified by the informant. Reasonable suspicion can arise from information which is less reliable than that required to show probable cause. *Alabama v. White*, 496 U.S. at 329, 110 S.Ct. at 2416. We conclude that the information of Johnson's activities at the gas station coupled with the officer's knowledge of Johnson's past history with narcotics and the tip with its subsequent verification furnished the officers with reasonable suspicion to make an investigatory stop. The initial seizure of Johnson did not violate the Fourth Amendment.

However, Johnson's detention was not a brief and narrowly-circumscribed intrusion involving only questioning. Almost immediately, it began to take on aspects rendering it indistinguishable from a traditional arrest. During the period when police were discussing with Johnson their belief that Johnson was transporting narcotics, Johnson became loud and anxious. The officers restrained him by holding his wrists. Johnson was not questioned briefly and let go, but was handcuffed, taken from the area where he was stopped to a police car, and transported three blocks away to a place where he could be safely searched. He was not informed that he was free to go but was physically restrained to prevent his leaving.

 There is absolutely no evidence in the record that, at the time the officers stopped Johnson and began to question him, they had reason to believe Johnson was armed and dangerous, information which would have permitted a weapons search of Johnson's person and the passenger compartment of his automobile, limited in scope to the purpose of self-protection.

*See Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201. Indeed, the officers did not even search Johnson for a weapon before they handcuffed him and put him in the police car. Moreover, when the officers conducted the search of Johnson's person, they did not limit the scope of their search to a patdown of Johnson's outer clothing; Johnson was required to open his trousers to permit the visual and tactile search of his underclothing. Consequently, neither the seizure of Johnson nor the search of his person can be said to be even roughly analogous to the narrowly defined intrusions permitted without prior judicial authorization by *Terry* and its progeny.[1] Hence, both Johnson's continued detention, whether or not technically characterized as an arrest, *Dunaway v. New York* (1979), 442 U.S. 200, 213–4, 99 S.Ct. 2248, 2257–8, 60 L.Ed.2d 824; *Brown v. Illinois* (1975), 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (Officers drew guns, informed suspect that he was under arrest and handcuffed him); *see also Berkemer v. McCarty* (1984), 468 U.S. 420, 441, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (Motorist detained pursuant to traffic stop who is thereafter subjected to treatment that renders him "in custody" for practical purposes, entitled to full panoply of protections prescribed by *Miranda*), and the warrantless search of his person, must be supported by probable cause and justified by one of the other recognized exceptions to the warrant requirement.

"Probable cause to arrest depends upon whether, at the moment the arrest was made ... the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had committed or is committing an offense." *Adams v. Williams*, 407 U.S. at 147, 92 S.Ct. at 1924 (quoting *Beck v. Ohio*

---

**1.** The search for weapons allowed under *Terry* continues to be "strictly circumscribed" by its sole justification: the protection of the officers and others nearby. *Minnesota v. Dickerson* (1993), — U.S. —, 113 S.Ct. 2130, 124 L.Ed.2d 334. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry*. *Id.* at —, 113 S.Ct. at 2132 (citing *Sibron v. New York* (1968), 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917. *See also Ybarra v. Illinois* (1979), 444 U.S. 85. "These principles were settled 25 years ago ..." *Minnesota v. Dickerson,* — U.S. at —, 113 S.Ct. at 2136.

(1964), 379 U.S. 89, 91, 85 S.Ct. 223, 226, 13 L.Ed.2d 142). At the moment of arrest, that is, when Johnson was physically restrained by the handcuffs and it was objectively apparent that he was no longer free to leave, the officers possessed the following facts and information which tended to suggest that Johnson was probably in possession of narcotics. First, the officers had information that Johnson could be found in his car, a brown Jaguar, in a particular area of town, that evening, transporting narcotics. The officers knew nothing about the source of the tipster's information; and, while the informant was known to the officers and had provided information over a five-year period, his information had been accurate according to the officer "some of the time." Moreover, the informant's statement does not contain such detail as to suggest that the informant must have had personal knowledge. Nonetheless, before Johnson was prevented from leaving, the officers had verified virtually all of the informant's tip but the fact of possession itself: Johnson was in his car, a brown Jaguar, in the area described that evening. When he was stopped, he was immediately concerned about a search of his pants, one of the locations the tipster had said the narcotics could be found. The officer who received the tip knew Johnson, his car, and that he had possessed narcotics in the past. Johnson had been observed on several recent occasions with large amounts of cash in his possession and had stated in the presence of an officer that he would be taking long trips in his car, actions which may be suspiciously indicative of narcotics trafficking.

Although the trustworthiness of the information possessed by the police is established by different means, namely firsthand observations by police officers and Johnson's own inculpatory question, the quantity of information relied upon to make the arrest is so similar to that possessed by the police in *McCray v. Illinois* (1967), 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 as to convince us that the police had probable cause to arrest Johnson and conduct the incidental search. In *McCray*, the police learned from an informant who had given reliable information in the past that McCray, with whom the officers were acquainted, "was selling narcotics and had narcotics on his person and could be found in the vicinity of 47th and Calumet at this particular time." The informant had observed McCray selling narcotics to various people. The officers drove to the area and observed McCray walking with a woman, then separating from her and meeting briefly with a man, then proceeding alone, and finally, after seeing the police car, hurriedly walking between two buildings. Officers stopped McCray, informed him that they had information he had narcotics on his person and placed him in the police vehicle. They then searched McCray and found heroin in a cigarette package. The arrest and search were upheld as reasonable.

Admittedly, the police officers who arrested Johnson did not know the source of their informant's information and had not observed Johnson selling or buying narcotics, though his actions over a period of time had led them to suspect that he was doing so. The tip therefore does not have the same quality of trustworthiness as the tip in *McCray*. But the arrest did not occur until after Johnson himself had corroborated the tip by directing the officers to the location of the marijuana on his person. Under other circumstances, the question might have been merely coincidental; but here, it provided the verification needed to make the tip reasonably reliable.

A fair probability, not a prima facie showing of criminal activity, is the standard of probable cause. *Illinois v. Gates* (1983), 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527. Whether or not a formal arrest had been made, the officers had probable cause to arrest Johnson without the fruits of the search. *Cf. Young v. State* (1991), Ind.App., 564 N.E.2d 968, *trans. denied* (Officer who heard beeper, remembered prior narcotics arrest, saw large sum of money protruding from pocket and piece of baggie sticking from pants had probable cause to *search* Young). The search of Johnson's person could therefore be properly characterized as incident to ar-

rest for which prior judicial authorization is not required. *Cf. Rawlings v. Kentucky* (1980), 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633; *Cupp v. Murphy* (1973), 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900; *Sibron v. New York* (1967), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 *with Smith v. Ohio* (1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (Search which provides probable cause to arrest cannot be justified as an incident of that arrest).

 Since the police may search an automobile without a warrant if their search is supported by probable cause, *California v. Acevedo* (1991), — U.S. —, —, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, we turn our attention to the question of whether there was probable cause to believe that the contents of Johnson's automobile offended the law at the time it was searched. As best we can tell from the record, the search of the vehicle occurred before or contemporaneously with the search of Johnson's person. By that time, however, Johnson had already asked whether the officers intended to look in his pants.

 As we have indicated, Johnson had indirectly confirmed one of the locations of the narcotics given police by their informant and the officers had probable cause to believe that Johnson possessed narcotics in his pants. That the informant had known Johnson would conceal narcotics in his pants strengthens the probability that the informant also knew Johnson to be concealing narcotics in his vehicle and transporting them. *See Adams v. Williams*, 407 U.S. at 147, 92 S.Ct. at 1924. Indeed, the informant had advised the officers that if they did not find the narcotics in the car, they should look in Johnson's pants.

Moreover, the observations of a fellow officer suggested that Johnson's involvement with narcotics was more than merely possessory for it was Johnson's concern about his vehicle's road-worthiness and possession of large amounts of cash which had first raised suspicions about him. We note one other factor which added some weight to the overall assessment of probability: Johnson exited his vehicle immediately after he was stopped and moved away from it. Plainly, it is in the interest of one who knows about the presence and illegal nature of contraband in a vehicle to minimize the vehicle's accessibility to the officers. For these reasons, we conclude that based upon the totality of the circumstances, there was a fair probability that contraband would be found in Johnson's vehicle. The search of Johnson's vehicle without a warrant comported with the requirements of the Fourth Amendment. The trial court therefore did not err in denying Johnson's motion to suppress or in overruling his objections to the introduction of the evidence obtained as a consequence of the search.

Having found no reversible error, it is our conclusion that the judgment of conviction should be affirmed.

Judgment affirmed.

SHARPNACK, C.J., and MILLER, J., concur.