Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**PATRICK A. DUFF**
Duff Law, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jul 16 2013, 9:42 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ROMELL COLVIN,                      )
                                    )
    Appellant-Defendant,         )
                                    )
      vs.                   )    No. 82A01-1212-CR-576
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.          )

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Wayne S. Trockman, Judge
Cause No. 82D02-1011-FD-1108

**July 16, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Romell Colvin ("Colvin") appeals his conviction in Vanderburgh Superior Court for Class D felony dealing in marijuana. Colvin argues that the State presented insufficient evidence to support his conviction.

We disagree and affirm.

**Facts and Procedural History**

On November 1, 2010, Colvin's then-girlfriend, Jernice Mitchell ("Mitchell") rented a car in Clarksville, Tennessee. Mitchell asked Colvin to travel to Calumet City, Illinois, to pick up her brother, Jerome Morris ("Morris") and bring him back to Clarksville for the holidays. Mitchell did not list Colvin or Morris as authorized drivers on the rental agreement, but Colvin left Clarksville, Tennessee around noon on November 2, 2010, driving the car north by himself.

Colvin arrived in Calumet City, Illinois, at the home of Mitchell's mother around 6:30 or 7:00 that evening. Upon Colvin's arrival, Morris left in the rental car, and did not return until the following morning. Colvin, who had not been prepared to spend the night and had failed to pack extra clothes or toiletries, slept at Mitchell's mother's home until Morris returned.

Around 5:00 a.m. on November 3, 2010, Morris returned with the rental car and awakened Colvin so that the two could leave immediately. The two departed Calumet City, Illinois, for Clarksville, Tennessee, and Morris drove for most of the trip. Around 11:30 a.m., the two stopped near Evansville, Indiana, and decided that Colvin should drive.

2

Approximately five minutes later, at 11:35 a.m., Officer Lenny Reed ("Reed") of the Evansville Police Department was on assignment pursuant to an aggressive driving grant[1] on southbound Highway 41. Reed saw the vehicle, driven by Colvin, following too closely to the vehicle in front of it, and initiated a traffic stop.

Colvin's car had a Texas license plate, and when Reed asked Colvin and Morris to produce their driver's licenses, Colvin produced a Missouri license and Morris produced an Illinois license. Colvin also produced the rental agreement. Reed informed Colvin that he had been stopped for following too closely, which Colvin admitted. During their brief initial conversation, Reed noticed that Colvin was nervous. Reed also smelled the odor of raw marijuana emanating from the car.

When Reed examined the rental agreement, he saw that the car had been rented from Enterprise Rent-A-Car Company of Tennessee ("Enterprise") in Clarksville, Tennessee. Although the agreement was valid from November 1 to November 8, 2010, Reed saw that neither Morris nor Colvin was authorized to drive the car. Rather, the rental agreement was only in Mitchell's name, and the agreement stated, "NO OTHER DRIVERS PERMITTED." Ex. Vol. I, State's Ex. 1 (emphasis in original). Colvin informed Officer Reed that Mitchell was his girlfriend, and also that he had driven the car to Chicago and was headed back to Clarksville, Tennessee.

Officer Reed called Enterprise, and was informed that neither Colvin nor Morris was to have control of the car. Enterprise requested that the vehicle be towed to its nearest rental facility. Reed also called a K-9 officer to the scene, because he had

---

[1] An aggressive driving grant is a patrol order, under which police officers look for aggressive driving and issue infractions for speeding, following too closely, and other dangerous driving habits.

smelled the odor of raw marijuana. Officer Brent Hoover ("Hoover") arrived with his police dog, Gonzo, shortly thereafter.

Upon Hoover's arrival, Colvin was already outside the car, and Morris was asked to step outside as well. Hoover also noted the scent of raw marijuana emanating from the car before running Gonzo clockwise around the car. Gonzo alerted at the area of the car's trunk. According to protocol, Hoover ran Gonzo around the car in the opposite direction to verify the alert. Gonzo again alerted at the area of the trunk, and Hoover then opened the trunk, encountering the overwhelming scent of raw marijuana.

Inside the trunk, Hoover discovered a white, semi-opaque trash bag, and also a small plastic shopping bag. Through the semi-opaque trash bag, Hoover could see green material showing through. Upon opening the trash bag, Hoover encountered nine clear gallon-sized baggies containing a green leafy substance that he recognized as marijuana from his police training. Inside the shopping bag were jeans, a pair of shoes and a toothbrush. Morris told Reed that the clothing belonged to him. The officers also found three cell phones in the car. At that point, Morris and Colvin were arrested and searched incident to arrest, and $1,150 in cash was found on Morris's person.

Detective Chris Goergen of Evansville's joint drug task force arrived to take custody of the evidence, and to take a field weight of the marijuana baggies. The baggies, altogether, weighed 4,000 grams, or approximately nine pounds.[2] The investigating officers determined that the amount of marijuana found in the trunk was not

---

[2] One pound is equivalent to approximately 454 grams.

consistent with personal use.[3] The baggies were then delivered to the State Police Lab, and a forensic scientist tested a sample of the contents from two of the baggies, both of which tested positive for marijuana.

Just over a year later, on November 8, 2011, Colvin was charged in Vanderburgh Superior Court with Class D felony dealing in marijuana. Colvin was convicted in a jury trial on November 15, 2012. On December 10, 2012, the trial court sentenced Colvin to a two-year sentence in the Department of Correction, the entirety suspended to probation.

Colvin now appeals.

**Discussion and Decision**

Colvin argues that the State presented insufficient evidence to support his conviction. Our standard of review for a challenge to the sufficiency of the evidence is well settled. This court does not reweigh evidence, nor will we consider the credibility of witnesses. Allen v. State, 798 N.E.2d 490, 500 (Ind. Ct. App. 2003) (citing Cox v. State, 774 N.E.2d 1025, 1028-29 (Ind. Ct. App. 2002)). We will consider only evidence that is favorable to the verdict, along with reasonable and logical references that may be drawn therefrom. Id. (citing Alspach v. State, 755 N.E.2d 209, 2010 (Ind. Ct. App. 2001), trans. denied). If there is substantial evidence of probative value to support the trier of fact's verdict, we will affirm the conviction. Id. Circumstantial evidence alone may sustain a conviction if the circumstantial evidence supports a reasonable inference of guilt. Id. (citing Maul v. State, 731 N.E.2d 438, 439 (Ind. 2000)).

---

[3] Specifically, Detective Goergen testified that an amount of marijuana for personal use is typically around 30 grams, and the amount and manner in which the marijuana in this case was packaged indicated intent to distribute.

Colvin argues that the State failed to present sufficient evidence because it relied on a theory of constructive possession but failed to prove that Colvin had both the capability and intent to exercise control over the marijuana. Indiana Code section 35-49-4-10 states, in relevant part:

> A person who knowingly or intentionally . . . delivers marijuana . . . pure or adulterated; or possesses, with intent to . . . deliver marijuana . . . commits dealing in marijuana. . . . The offense is a Class D felony if . . . the amount involved is more than thirty (30) grams but less than ten (10) pounds of marijuana.

Possession can be sole or joint, actual or constructive. The State's theory in this case was that Morris and Colvin possessed the nine pounds of marijuana jointly, and that Colvin, in operating the car, had constructive possession of the marijuana.

This court has held that "[c]onstructive possession is established by showing the defendant has the intent and capability to maintain dominion and control over the contraband." Godar v. State, 643 N.E.2d 12, 14 (Ind. Ct. App. 1994), trans. denied, (citing Jackson v. State, 588 N.E.2d 588, 591 (Ind. Ct. App. 1992). A trier of fact may infer the requisite intent from the voluntary commission of the act. Id. (citing Johnson v. State, 617 N.E.2d 559, 563 (Ind. Ct. App. 1993)). Joint possession can be established without any showing that the defendant had actual physical control of the contraband. Id. However, in a case of non-exclusive possession, the State must prove that the defendant had actual knowledge of the presence and illegal character of the substance. Id. Circumstantial evidence that is indicative of actual knowledge can include factors such as proximity of the contraband to the defendant, furtive gestures, and the place where the contraband is found. Carnes v. State, 480 N.E.2d 581, 586 (Ind. Ct. App. 1985).

Colvin contends that the State's proffered evidence failed to establish that he had actual knowledge of the marijuana. However, the State did introduce evidence to establish that Colvin was driving the car, that he and Morris had been in the car for around seven hours that day, that Colvin behaved nervously throughout his interactions with police, and that the scent of the raw marijuana was noticeable from outside the vehicle. In light of that evidence, a reasonable trier of fact could infer that Colvin, too, could smell the marijuana and was thus aware of its presence. See Adams v. State, 946 N.E.2d 630, 633 (Ind. Ct. App. 2011), summarily aff'd in relevant part, 960 N.E. 793, 796 (Ind. 2012) (holding that where a police officer could smell marijuana through the open passenger-side window of a vehicle, knowledge of marijuana could be imputed to the passenger). Additionally, because Colvin was driving the vehicle at the time of the stop and had also driven it from Tennessee to Illinois, the jury could also infer that Colvin had the capability to access the car's trunk and the marijuana.

Colvin's nervous demeanor also supports constructive possession, because it could reasonably be considered a furtive gesture. Cf. Godar, 643 N.E.2d at 15 (holding that a passenger in proximity to concealed drugs who did not act furtively did not demonstrate knowledge of its presence). Finally, the jury reasonably found that Morris and Colvin intended to deliver the marijuana for dealing based on the amount of marijuana found and the long interstate journey taken by the men in the rental car neither was authorized to drive. See Berry v. State, 574 N.E.2d 960, 963 (Ind. Ct. App. 1991), trans. denied (holding that possession of large amount of a narcotic substance is circumstantial evidence of intent to deliver).

This court does not reweigh evidence on appeal. <u>Allen</u>, 798 N.E.2d at 500. The circumstantial evidence in this case, together with the reasonable inferences the jury made from that evidence, is sufficient to uphold Colvin's conviction on appeal.

Affirmed.

BAKER, J., and MAY, J., concur.