THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CUR-
TIS MITCHELL, Defendant-Appellee.

First District (5th Division)    No. 1—93—0013

Opinion filed December 17, 1993.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Annette
Collins, Leslie German, and Elaine Wisnosky, Assistant State's Attorneys, of
counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Evelyn G. Baniewicz, Assistant
Public Defender, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Defendant Curtis Mitchell (Mitchell) was arrested on July 5,
1992, and charged with possession of crack cocaine, a controlled
substance. He subsequently filed a motion to quash his arrest and
suppress evidence seized at the time of his arrest, as well as
statements, identifications and other evidence obtained subsequent to
the arrest. After a hearing held November 9, 1992, the circuit court
sustained defendant's pretrial motion to suppress evidence against
him and the People of the State of Illinois brought this appeal. We
now reverse the trial court's ruling.

The facts of this case are as follows.

At approximately 12:40 a.m. on July 5, 1992, Mitchell was observed by Chicago police officer Edward King driving an automobile down an alleyway in the vicinity of 330 West Locust in Chicago. Officer King's suspicions were aroused by the fact that the car had no license plates and was being driven without any lights on. After traveling a couple of blocks, the car came to a stop and Mitchell exited the car. Due to the suspicious circumstances and the fact that the area was known to the officer to be a high crime area for thefts from autos and auto thefts, Officer King approached Mitchell to question him. When he did so he was able to look inside the car. He noticed that the steering wheel had been "peeled" and he observed "crack pipes" (glass pipes used for smoking crack cocaine) and pieces of copper scouring pads (known to the officer to be used as a filter in the glass pipe when smoking crack cocaine) lying on the front seat.

At this point Officer King decided to conduct a protective pat-down for weapons. When he did, he felt a plastic baggie in Mitchell's front shirt pocket. He could feel that there were some small hard objects inside the baggie. Based upon his prior observations and his 17 years of experience on the police force, Officer King believed that Mitchell was in possession of a controlled substance, namely rock cocaine. Consequently, the officer removed the baggie from Mitchell's shirt, placed him under arrest for possession of a controlled substance and informed him of his rights pursuant to the *Miranda* decision.

After hearing the evidence recited above, the trial court granted Mitchell's motion to suppress the narcotics that were seized from him. The trial court held that, pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, there was sufficient cause for the officer to have stopped Mitchell to make inquiry into his conduct. (See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (police officer may make an investigatory stop of an individual if he can articulate facts which would cause a reasonable person to believe that criminal activity may be afoot and may conduct a pat-down search if there is reason to believe that the person may be armed).) Further, the trial court found that the officer was justified in having conducted a pat-down search for weapons. Nonetheless, the court held that the officer exceeded his authority by removing the plastic baggie from Mitchell's pocket since the officer could not have legitimately believed that the item he felt was a weapon. The court held that Mitchell's constitutional rights were violated and that the contraband was subject to suppression.

The State filed a motion to reconsider, which the trial court denied, and the State then brought this timely appeal. The State sets forth two separate rationales for upholding the search and seizure

that took place in this case. First, the State contends that the facts known by Officer King prior to the time he conducted the pat-down search on Mitchell constituted probable cause to have arrested Mitchell for a crime other than possession of narcotics. Based upon the fact that probable cause to arrest Mitchell for some crime existed prior to any search, the officer had the right to conduct a full search, not merely a pat-down search. The fact that Mitchell was not arrested for the other crime is irrelevant, the State argues. The State cites to *People v. Kolichman* (1991), 218 Ill. App. 3d 132, 578 N.E.2d 569, a case which fully supports its position.

In the alternative, the State asks this court to adopt the "plain feel" doctrine, a corollary to the "plain view" doctrine, which was recently recognized by the United States Supreme Court in *Minnesota v. Dickerson* (1993), 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130. The State argues that this court should find that Officer King's sensorial perceptions made at the time of a legitimate *Terry* stop and frisk, along with his observations of the "crack" paraphernalia in the car, gave Officer King probable cause to arrest Mitchell for possession of narcotics prior to the seizure of the baggie from Mitchell's pocket.

We've taken this opportunity to review the decision in *Minnesota v. Dickerson*. Having done so, we find that the present case falls squarely within the parameters of the plain-feel exception to the fourth amendment restriction against unreasonable searches and seizures, as enunciated in that United States Supreme Court case. Consequently, we reverse the trial court's ruling on the motion to suppress.

In *Minnesota v. Dickerson* the Supreme Court analyzed the constitutional guarantees granted to all citizens under the fourth amendment to the United States Constitution (U.S. Const., amend IV) and made applicable to the States by the fourteenth amendment. It noted that warrantless searches and seizures have been deemed *per se* unreasonable, subject to only a handful of exceptions.

One such exception, recognized in *Terry v. Ohio*, allows a police officer to briefly detain a person, without probable cause to arrest, when the officer observes conduct that reasonably arouses his suspicion that a crime is being, or is about to be, committed. The *Terry* court also recognized that, to allow the officer to pursue his investigation without fear of violence, a protective pat-down search may be conducted whenever the circumstances justify the officer's belief that the person may be armed.

After reviewing these long-settled principles, the *Dickerson* court went on to consider whether an officer may seize nonthreatening contraband detected during a pat-down search. The Court answered

this question in the affirmative, holding that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass make its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context." (*Minnesota v. Dickerson*, 508 U.S. at 375-76, 124 L. Ed. 2d at 346, 113 S. Ct. at 2137.) The Court went on to state that "[r]egardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures." *Minnesota v. Dickerson*, 508 U.S. at 376, 124 L. Ed. 2d at 346, 113 S. Ct. at 2137.

In the present case the State argued, both at trial and in the motion to reconsider, that an extension of the plain view exception, *i.e.*, a "plain touch" exception, should apply to the facts of this case. They cited Federal case law (*Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469; *United States v. Williams* (D.C. Cir. 1987), 822 F.2d 1174) as well as State case law (*People v. Morales* (1991), 221 Ill. App. 3d 13, 581 N.E.2d 730) in support of this proposition. The State argued that the police officer's tactile perceptions, in conjunction with his observation of drug paraphernalia, provided him with probable cause to arrest Mitchell.

The defendant, on the other hand, advocated adherence to the long line of cases that hold that a valid *Terry* stop and frisk is strictly limited to a search for weapons and that any soft item, which cannot legitimately be deemed a weapon, may not be seized.

After hearing both arguments, the trial court found that the officer was justified in making both the stop and the frisk. He then went on to state:

"Now, it gets to what I would say is the guts of this case, is that it gets to be whether in making the stop of the car, the officer stated that he had seen crack pipes and the column peeled, although I believe he's still in a Terry situation, the crack pipes certainly would alert him that narcotics could be involved in this case in making a pat down and finding the one packet.

At this point, although I believe it was good police work, and the officer feeling that it would—certainly should be taken off—gotten off the street, I believe it's beyond what the constitution is now allowing. So I'll grant the motion to suppress at this point."

Again at the motion to reconsider, the trial court reiterated its belief that "you cannot remove a soft package when you are making a search for weapons."

A trial court's decision to suppress evidence will not be overturned on review unless that decision is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162, 535 N.E.2d 837.) Given the fact, however, that in this case the trial court did not have the benefit of the recent Supreme Court case to guide it when ruling on this matter, we find that the trial court's ruling was manifestly erroneous.

Based upon the trial court's statements at trial and again at the motion to reconsider, it seems clear that the trial court believed that the police officer, in the course of the valid *Terry* stop and frisk, was readily able to discern the presence of what he reasonably believed to be narcotics, based upon his past experience and knowledge, but that he could not act upon those beliefs. We find, however, that pursuant to the *Dickerson* case and the plain touch extension of the plain view doctrine, Officer King was acting within the lawful bounds of *Terry* at the time that he obtained probable cause to believe that Mitchell was in possession of contraband. Furthermore, as the trial court noted, the officer's observation of drug paraphernalia in the car alerted him to the fact that drugs could be involved. Thus, when the officer felt the plastic baggie containing a small, hard, rock-like substance, the officer had probable cause to believe that the item was contraband and he was justified in seizing it. See *People v. Spann* (1992), 237 Ill. App. 3d 705, 604 N.E.2d 1138; *People v. Morales*, 221 Ill. App. 3d 13, 581 N.E.2d 730.

Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution in believing that an offense has been committed and that it was committed by defendant. (*People v. Neal* (1985), 111 Ill. 2d 180, 193, 489 N.E.2d 845; *People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228.) Whether probable cause exists is determined not by technical legal rules, but by commonsense, practical examination of the totality of the circumstances. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317; *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) In this case, the officer's tactile perceptions, made during the valid *Terry* stop and frisk, provided him with information which, taken together with his previous observations and experience, gave him probable cause to arrest. Hence, we find that the seizure of the baggie from Mitchell's pocket was valid.

Although we adopt and apply here the United State Supreme Court's analysis of constitutional guarantees provided under the fourth amendment of the United States Constitution, we reject defendant's claim that a different analysis should be applied under our State Constitution. As recently noted in *People v. Stoddard*

162

(1993), 256 Ill. App. 3d 989, our Illinois Supreme Court has already held that it would interpret section 6 of the Illinois Bill of Rights (Ill. Const. 1970, art. 1, § 6) in the same way that the United States Supreme Court had interpreted the fourth amendment. Therefore, our State Constitution affords no greater rights in search and seizure cases than the United States Constitution.

For the reasons stated above, we reverse the circuit court's order of suppression in this case.

Reversed.

McNULTY and COUSINS, JJ., concur.