THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES BLAKE, Defendant-Appellant.

Second District    No. 2—93—0541

Opinion filed January 10, 1995.

BOWMAN, J., dissenting.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

Defendant, James Blake, was convicted in a stipulated bench trial of the unlawful possession of less than 15 grams of cocaine (Ill.

Rev. Stat. 1991, ch. 56¹/₂, par. 1402(c) (now 720 ILCS 570/402(c) (West 1992))). The trial court sentenced him to 30 months of intensive probation and 9 months of periodic imprisonment. He appeals, contending that the court erred in denying his motion to suppress the evidence and that he is entitled to credit toward his street-value fine for the time he was in custody prior to sentencing. We reverse.

At the hearing on the motion to suppress, Officer Cimaglio, of the Mundelein police department, testified that on May 2, 1992, he was on routine patrol in a marked squad car. Around 10:30 p.m., he drove through the parking lot of a tavern. Cimaglio was aware of problems behind this tavern, in particular of drug deals in the parking lot. As he came around the south side of the building, he observed two men in the northeast corner, close to the building. One of them was defendant. Cimaglio was about 25 feet away from them when he saw them "exchanging items." Although there was a floodlight, the men were slightly shadowed so that Cimaglio could not see what they were exchanging. He believed that a drug transaction was occurring. As he approached, they immediately put their hands in their front pants pockets. The two men appeared "very nervous," they kept their hands in their pockets, and they shrugged their shoulders. Cimaglio exited his car and identified himself as a police officer. He asked them to remove their hands from their pockets. They did so only after several requests. Cimaglio had them put their hands on the squad car, and he patted them down because he feared for his safety.

He did not find anything that felt like a weapon, but he felt a "bulge" in defendant's left front pants pocket. Cimaglio testified the "bulge" felt like "a rolled object, pretty well packed, but able to maneuver, bend its shape." It felt as if it was in a plastic bag and was marijuana. Between 20 and 30 times he had done pat-down searches and found a plastic bag containing marijuana. When he retrieved the bag from defendant's pocket, he recognized it as marijuana. After he arrested defendant, Cimaglio found cocaine in defendant's wallet.

Defendant testified that he was heading home and left the tavern through the back with a friend. Defendant was going through his pockets searching for his apartment keys when Officer Cimaglio approached. Cimaglio asked defendant and his companion to take their hands out of their pockets. Defendant complied after several requests. Cimaglio searched through all of defendant's pockets. In the pocket of defendant's shirt, Cimaglio found marijuana. Defendant had a jacket on over the shirt.

The prosecutor argued that the officer had the authority to make the stop, conduct a frisk, and remove the marijuana from defendant's pants pocket. Defendant responded that the search here was more

intrusive than that permitted during a pat down for weapons. The court credited the officer's testimony and found that the frisk for weapons was justified. It determined that was the end of the investigatory stop analysis and then considered whether the officer had probable cause to believe that defendant had contraband. The court noted the following factors: the officer saw two people exchanging items; his 15 years' experience as a police officer; the number of drug arrests and marijuana arrests he made; and his observations of marijuana. Based on those factors, the court found that the pat down of the bulge in defendant's pocket gave Officer Cimaglio probable cause to believe that defendant possessed contraband. (Although the court did not specifically state whether it found that the marijuana was in the pants pocket, as testified to by Officer Cimaglio, or in the shirt pocket, as defendant testified, we assume the former because the court accepted Cimaglio's version of the events.) The court therefore denied the motion to suppress.

Defendant first contends that the court erred in denying his motion to suppress the evidence. We may not disturb the trial court's ruling on a motion to suppress unless that decision is clearly erroneous. (*People v. Williams* (1994), 161 Ill. 2d 1, 26.) Under the fourth amendment, warrantless searches are *per se* unreasonable, unless the search falls within a specific exception. (*People v. Bailey* (1994), 159 Ill. 2d 498, 503.) One such exception is a *Terry* stop, where a police officer's observations create a reasonable suspicion that the person has committed or is about to commit a crime. (*Terry v. Ohio* (1968), 392 U.S. 1, 30-31, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884; see also Ill. Rev. Stat. 1991, ch. 38, par. 108—1.01 (now 725 ILCS 5/108—1.01 (West 1992)).) However, an officer may frisk a suspect only if there is reason to believe that the person is armed and dangerous (*People v. Spann* (1992), 237 Ill. App. 3d 705, 709), and the scope of the search must be strictly limited to searching for weapons (*People v. Galvin* (1989), 127 Ill. 2d 153, 170).

Defendant does not contest the validity of the stop, but he argues that there was no justifiable basis for the frisk. We need not consider this question as, assuming the frisk was justified, we agree with defendant that there was no probable cause to remove the bag from defendant's pocket.

■ The "plain feel" exception to the fourth amendment applies to frisks of suspects. "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons ***." (*Minnesota v. Dickerson* (1993), 508 U.S.

366, 376, 124 L. Ed. 2d 334, 346, 113 S. Ct. 2130, 2137.) The officer must have probable cause to believe that the item is contraband before it may be seized. (*Dickerson*, 508 U.S. at 376, 124 L. Ed. 2d at 346, 113 S. Ct. at 2137.) Probable cause exists when the facts and circumstances known to the officer are sufficient to warrant a person of reasonable caution to believe that an offense has been committed and the defendant committed it. (*People v. Jones* (1993), 156 Ill. 2d 225, 237.) Probable cause is more than a mere suspicion, but less than evidence sufficient to convict the defendant. (*In re D.G.* (1991), 144 Ill. 2d 404, 409.) "[W]here the question is whether a crime has been committed, as opposed to whether a particular individual committed a known crime, more evidence will be required to satisfy the probable cause requirement." *D.G.*, 144 Ill. 2d at 410.

■ Defendant relies on *Spann* where, during a frisk of the defendant, the police officer felt a soft bulge in the defendant's right front pocket. He squeezed the bulge, and it felt as if it was a powder. The officer had a hunch that the bulge was a bag of cocaine. This court ruled that the tactile sensation of a packed powder did not give the officer probable cause to arrest the defendant as:

> "[The officer] could not explain how the bulge felt different from any legitimate contents of pockets. A powder alone is not illegal. There must be some other distinctive evidence to demonstrate its illegality." (*Spann*, 237 Ill. App. 3d at 712.)

Similarly, here, there was no explanation of how a tightly rolled mass could distinctively feel like marijuana to the exclusion of other legitimate substances, nor did the officer testify that in his prior experience he had felt marijuana through clothing similar to defendant's and in a tightly rolled mass.

Moreover, the continued exploration of a suspect's pocket after the officer concludes that it does not contain a weapon exceeds the scope of a proper *Terry* frisk. (*Dickerson*, 508 U.S. at 377-78, 124 L. Ed. 2d at 347-48, 113 S. Ct. at 2138-39.) In *Dickerson*, as here, the officer had to manipulate the object; its incriminating character was not immediately apparent. Contrary to the State's assertion, the officer did not testify that he bent the object to verify his suspicion. In fact, the tactile sensations involved here could only have been the result of a grope, not a pat down. *People v. Morales* (1991), 221 Ill. App. 3d 13, on which the State relies, is therefore inapposite. (See *Morales*, 221 Ill. App. 3d at 19 (the officer squeezed the bulge to determine if it was a weapon; he "immediately" thought it was a bag of marijuana).) (We note that the feeling of the objects in *Dickerson*, *People v. Mitchell* (1993), 257 Ill. App. 3d 157, and *Morales* was through a shirt or jacket pocket, not through pants, as here and in *Spann*.) "If the

protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson*, 508 U.S. at 373, 124 L. Ed. 2d at 344, 113 S. Ct. at 2136.

Because the search went beyond what was necessary to determine whether the object was a weapon, the officer had to have probable cause to search before he could manipulate the object in defendant's pocket. However, the circumstances here independently did not give the officer probable cause to believe that the soft bulge in defendant's pocket was contraband. The officer did not see what the men exchanged, and they were not in an inherently suspicious area. (*Cf. Mitchell*, 257 Ill. App. 3d at 161 (officer observed crack cocaine drug paraphernalia in car and felt small hard objects in plastic baggie in the defendant's shirt pocket); *People v. Holman* (1987), 157 Ill. App. 3d 764, 774 (police officer saw men exchange pills).) Merely appearing nervous at the approach of a police officer is not sufficiently suspicious conduct to justify probable cause. The officer had no information that either defendant or his companion was a drug dealer. The facts known to the officer did not establish probable cause to believe that a drug transaction had occurred. We therefore conclude that the trial court should have suppressed the evidence of the cocaine.

Because the evidence at a new trial, without the cocaine, would be insufficient to support a conviction, we reverse defendant's conviction outright, and we need not address his second contention.

The judgment of the circuit court of Lake County is reversed.

Reversed.

GEIGER, J., concurs.

JUSTICE BOWMAN, dissenting:

I respectfully dissent. I believe the trial court's ruling was fully justified since the search involved here was a proper "plain feel" search under the authority of *Minnesota v. Dickerson* (1993), 508 U.S. 366, 376, 124 L. Ed. 2d 334, 346, 113 S. Ct. 2130, 2137.

The majority start off on the right foot: I agree with their conclusion that the continued exploration of a subject's pocket after the officer concludes that it does not contain a weapon exceeds the scope of a *Terry* frisk. (*Dickerson*, 508 U.S. at 377-78, 124 L. Ed. 2d at 347-48, 113 S. Ct. at 2138-39.) Objects discovered in such an exploration may not be used to establish probable cause. However, defendant does not dispute that, had Officer Cimaglio identified the cannabis in a proper manner, that information, coupled with the

officer's other knowledge at the time of the stop, would have provided probable cause to search the defendant's person or seize the item in his pocket. Thus, the dispositive question here, as it was in *Dickerson*, is whether the officer who conducted the search was acting within the lawful bounds marked by *Terry* at the time he gained probable cause to believe that the lump in respondent's pocket was contraband. *Dickerson*, 508 U.S. at 377, 124 L. Ed. 2d at 347, 113 S. Ct. at 2138.

The officer in *Dickerson* testified as follows concerning the scope of the search he conducted following a *Terry* stop:

> " '[A]s I pat-searched the front of his body, I felt a lump, a small lump, in the front pocket. I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane.' " (*Dickerson*, 508 U.S. at 369, 124 L. Ed. 2d at 341, 113 S. Ct. at 2133.)

Regarding this testimony and other facts and findings contained in the State court record, the *Dickerson* court noted: (1) the officer made no claim that he suspected the object he felt in the defendant's pocket to be a weapon; (2) the Minnesota Supreme Court closely examined the record and found that the officer's own testimony belied any notion that he immediately recognized the lump in the defendant's pocket as crack cocaine; and (3) the officer determined that the lump was contraband only after " 'squeezing, sliding and otherwise manipulating the contents of defendant's pocket'—a pocket which the officer already knew contained no weapon." (*Dickerson*, 508 U.S. at 378, 124 L. Ed. 2d at 347, 113 S. Ct. at 2138, quoting *State v. Dickerson* (Minn. 1992), 481 N.W.2d 840, 844.) Although the officer was lawfully in a position to feel the lump in defendant's pocket, the Supreme Court in *Dickerson* found the "plain feel search" constitutionally invalid because the identity of the object the officer felt was not immediately apparent to him and he determined it was contraband only after conducting a further search (squeezing, sliding, and manipulating the object), which was not authorized by *Terry*. *Dickerson*, 508 U.S. at 378, 124 L. Ed. 2d at 348, 113 S. Ct. at 2139.

In contrast to *Dickerson*, the facts of this case are persuasive that the police officer determined contemporaneously with his pat-down search for weapons that the item in defendant's pocket was contraband, rather than during a further search after he had already concluded it was not a weapon. The officer had conducted a *Terry* stop in the first place because of the circumstances indicating the occurrence of a drug deal. He would have been keenly aware of those circumstances when he patted down the defendant. Too, the officer had conducted pat-down searches which revealed a plastic bag

containing marijuana on 20 to 30 previous occasions. Officer Cimaglio's testimony, when considered in its entirety, also indicates that he determined the object was a bag of marijuana as soon as he touched it. On direct examination in defendant's case, Officer Cimaglio responded that he did not find any weapons on defendant when he patted him down. When asked what else he did after the pat-down, the officer replied: "I—as I padded [sic] him down, I felt a bulge in his left front pocket and also there was several items in his right front pocket." On cross-examination by the State, Cimaglio testified:

"Q. And when you did the pat down on the defendant, what did the items feel like in his front pant's pocket?

A. It was a rolled object, pretty well packed, but able to maneuver, bend its shape. It felt like it was in a plastic bag; and it felt as if it was a material known as cannabis.

Q. How many times have you done pat downs before, approximately, where you found a plastic bag containing cannabis?

A. Numerous times."

On this occasion Cimaglio further searched only the defendant's left front pants pocket even though he had also felt objects in the right pocket.

I believe the trial court could have reasonably inferred from, collectively, Officer Cimaglio's testimony, his previous experience, his observations of the situation before him, and his use of the sense of touch that, in the process of satisfying himself that the object he felt was not a weapon, the officer immediately and simultaneously determined it felt like a packet of marijuana. This determination, in turn, together with the other circumstances known to the officer, created the probable cause which permitted him to remove the object from defendant's pocket.

Support for my view may be found in the following quotation in 3 W. LaFave, Search & Seizure § 9.4(c), at 524 (2d ed. 1987):

"Assuming the object discovered in the pat-down does not feel like a weapon, this only means that a further search may not be justified under a *Terry* analysis. There remains the possibility that the feel of the object, *together with other suspicious circumstances*, will amount to probable cause that the object is contraband or some other item subject to seizure, in which case there may be a further search based upon that probable cause." (Emphasis added.) 3 W. LaFave, Search & Seizure § 9.4(c), at 524 (2d ed. 1987).

Whether probable cause exists is determined not by technical legal rules, but by a commonsense, practical examination of the totality of the circumstances. (*Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332; *People v. Tisler* (1984), 103 Ill. 2d 226, 236.) The totality of the circumstances here

justified the trial court's conclusion that Officer Cimaglio discovered that the item in defendant's pocket was a packet of marijuana contemporaneously with, rather than subsequent to, a proper patdown search. See *People v. Mitchell* (1993), 257 Ill. App. 3d 157.

Because I believe the trial court's conclusion is not clearly erroneous, I would affirm.