653 N.E.2d 1041 (1995)
In the matter of C.D.T., a Child Alleged to Be a Delinquent Child, Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 71A04-9408-JV-320.
Court of Appeals of Indiana.
July 26, 1995.
*1043 Louis L. Hegyi, South Bend, for appellant.
Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Respondent-Appellant C.D.T., a juvenile, appeals from a juvenile adjudication finding him to be a delinquent child for possession of cocaine, a class D felony[1] if committed by an adult.
We reverse and remand with instructions to vacate C.D.T.'s delinquency adjudication.

ISSUE
One issue is presented for our review: Whether the juvenile court properly denied C.D.T.'s motion to suppress evidence and any testimony regarding the evidence obtained in a warrantless search of his person.

FACTS AND PROCEDURAL HISTORY
On the evening of August 9, 1993, South Bend Police Officers Andrews and Jordan were dispatched to the vicinity of Lindsey and Scott Streets to investigate complaints of "open air" drug dealing. (R. 22). While heading southbound on Scott Street, Officer Andrews observed a large, white car stopped in the middle of the street and blocking traffic. Officer Andrews further observed C.D.T. bending into the passenger side of the car with his hands inside the passenger window. Standing behind C.D.T. was an unidentified male.
Officer Andrews became suspicious and pulled up behind the vehicle in his "semi-marked" squad car.[2] When Officers Andrews and Jordan exited the squad car, the unidentified male fled, and Officer Jordan chased after him. Officer Andrews then directed C.D.T. to step away from the car window and place his hands on the trunk. Officer Andrews conducted a patdown weapons search of C.D.T.'s outer garments. The search revealed no weapons; however, near C.D.T.'s right front pants pocket, Officer Andrews felt a crumbled plastic bag. Based on his nine years of experience as a police officer, Officer Andrews immediately suspected drug-related activity, so he reached into C.D.T.'s pocket and removed the bag. Inside the plastic bag was a smaller zip-lock bag which Officer Andrews opened and examined. The smaller inside bag contained an off-white colored substance. This substance was later confirmed to be cocaine.
A petition alleging delinquency was filed by the State alleging that C.D.T. committed an act which would be a crime if committed by an adult, to-wit: possession of cocaine, a class D felony. Following the hearing, C.D.T. was adjudged a delinquent and placed on probation for 30 days.
Prior to the delinquency hearing, C.D.T. filed a motion to suppress evidence. Following a suppression hearing, the trial court denied the motion. At trial, Officer Andrews testified as to the evidence he obtained during the search. C.D.T. objected, reiterating his prior arguments and the trial court overruled the objection. Therefore, the issue was *1044 properly preserved for our review. C.D.T. appeals.

DISCUSSION AND DECISION
C.D.T. contends that the trial testimony regarding the fruits of the illegal search was improperly admitted. Specifically, C.D.T. argues that Officer Andrews' search exceeded the scope of a lawful Terry[3] stop and frisk.
The trial court has broad discretion in ruling on the admissibility of evidence. We will not disturb its decision absent a showing of abuse of that discretion. Moore v. State (1994), Ind. App., 637 N.E.2d 816, 818, trans. denied, cert. denied in Moore v. Indiana (1995), ___ U.S. ___, 115 S.Ct. 1132, 130 L.Ed.2d 1093.
The juvenile code provides that "[i]n cases in which a child is alleged to be a delinquent child, the procedures governing criminal trials apply... ." I.C. 31-6-7-1(a) (1988). C.D.T. was adjudicated a delinquent pursuant to the Code which defines a delinquent child as "[one] who commits an act that would be an offense if committed by an adult... ." I.C. 31-6-4-1(a)(1) (1993). Having established that the adult criminal procedure rules apply to delinquency cases, we look to search and seizure law.
Our State Constitutional provision against unreasonable search and seizure provides as follows:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.
Article I, section 11, Ind. Const. The Indiana provision is virtually identical to the Fourth Amendment to the United States Constitution. Generally, a judicially issued search warrant is a condition precedent to a lawful search. Searches and seizures conducted outside of the judicial process are per se unreasonable under the Fourth Amendment. However, this general rule is subject to a few well-delineated exceptions. Thompson v. Louisiana (1984), 469 U.S. 17, 19-20, 105 S.Ct. 409, 410-11, 83 L.Ed.2d 246; Johnson v. State (1993), Ind. App., 617 N.E.2d 559, 565. The burden of proof is on the State to prove that the warrantless search was conducted within the confines of one of the exceptions to the warrant requirement. Chimel v. California (1969), 395 U.S. 752, 774, 89 S.Ct. 2034, 2046, 23 L.Ed.2d 685; Moore, 637 N.E.2d at 818; Rabadi v. State (1989), Ind., 541 N.E.2d 271, 274. Here, the State seeks refuge under the Terry investigatory stop and frisk exception to the warrant requirement.

I. Terry Stop and Frisk Exception

A. The "Stop"
It is undisputed that Officer Andrews was justified in his initial "investigatory stop" of C.D.T. One exception to the warrant requirement is an investigatory stop whereby a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity "may be afoot," even if the officer lacks probable cause. Terry, 392 U.S. at 30, 88 S.Ct. at 1884; Johnson, 617 N.E.2d at 565. The Terry standard is intended to ameliorate the harshness of the strict probable cause requirement and permit police officers to stop on something less than probable cause. However, we note that investigative stops remain a relatively narrow exception to the warrant requirement and cannot be used to provide a haven for unjustified stops. Under these facts, the officers were justified in stopping C.D.T. to determine if he was engaged in criminal activity.

B. The "Frisk"
Having decided that the initial stop of C.D.T. was proper, we next consider whether the subsequent search was permissible. The general exclusionary rule states as follows:
Evidence seized illegally or obtained as a result of an illegal seizure by a government *1045 agent is not directly admissible in a criminal or quasi-criminal proceeding against a person whose expectation of privacy was violated by the illegal seizure.
Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.
Under the Terry stop and frisk analysis, a police officer is permitted to make a Terry stop without a warrant and without probable cause. Because the suspects may be armed and dangerous, the police officer is entitled for his own protection and for the protection of others in the area, if he has a reasonable fear of danger, to conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons which might be used to assault him. Terry, 392 U.S. at 27, 88 S.Ct. at 1883. Such a search is reasonable under the Fourth Amendment and any weapons seized may properly be introduced into evidence against the accused. Id. at 29-30, 88 S.Ct. at 1884-85. It is undisputed that Officer Andrews was justified in feeling endangered by the situation, so as to permit the frisk.
However, the Terry frisk is a "patdown" of outer garments for concealed weapons strictly. If the officer finds something that feels like a weapon, then he can reach inside the clothing and check to see if it is a weapon. Id. The purpose of the Terry search is not to discover evidence of crime, but rather to allow the officer to pursue his investigation without fear of violence. The Terry search should be confined to its protective purpose. Id. at 27, 88 S.Ct. at 1883. We are asked to consider whether Officer Andrews' search of C.D.T. exceeded the scope of a lawful Terry frisk. The State contends that the so-called "plain feel" doctrine is controlling.

II. The "Plain Feel" Doctrine
The "plain feel" doctrine was articulated by the United States Supreme Court in Minnesota v. Dickerson (1993), ___ U.S. ___, 113 S.Ct. 2130, 124 L.Ed.2d 334, wherein the Court determined that police officers may seize non-threatening contraband detected during a protective patdown search of the sort permitted by Terry, so long as the search stays within the confines of a valid Terry search. Dickerson, ___ U.S. at ___, 113 S.Ct. at 2136.
In Dickerson, after making a valid Terry stop and conducting a valid patdown search which revealed no weapons, the officer felt a small lump in the defendant's jacket pocket. Upon further examining it with his fingers, the officer believed it to be crack cocaine so he reached into the defendant's pocket and seized a small bag of cocaine. The Minnesota Supreme Court found that the officer determined that the lump was contraband only after "`squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'  a pocket which the officer already knew contained no weapon." Id. at ___, 113 S.Ct. at 2138.
The U.S. Supreme Court affirmed the Minnesota Supreme Court's holding that the seizure was unconstitutional. Id. Specifically, the Court said that
[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
Id. at ___, 113 S.Ct. at 2137.
Therefore, the U.S. Supreme Court recognized the plain feel doctrine as valid; however, the Court said that the police officer clearly overstepped the bounds of the "strictly circumscribed" search for weapons allowed under Terry. Id. The Court went on to say that "[h]ere, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to `[t]he sole justification of the search [under Terry] ... the protection of the police officer and others nearby.'" Id. at ___-___, 113 S.Ct. at 2138-39. The Court concluded that the search amounted to an impermissible search under Terry and thus the evidence was properly suppressed. Id. at ___, 113 S.Ct. at 2139.
Because Indiana has no cases directly applying the plain feel test, we look to our *1046 neighboring state of Illinois for guidance. In People v. Blake (1995), 268 Ill. App.3d 737, 206 Ill.Dec. 575, 645 N.E.2d 580, the Illinois Appellate Court held that because the so-called "patdown" search went beyond that which was necessary to determine whether the suspect had a weapon and because the officer lacked probable cause to arrest the suspect, the evidence should have been suppressed. Blake, 206 Ill.Dec. at 578, 645 N.E.2d at 583. The facts in Blake are similar to the facts presently before us. While on routine patrol, the officer drove through a tavern parking lot where there had been recent problems with drug dealing. The officer thought he saw Blake and another man exchanging something, so he stopped Blake and asked him to submit to a patdown search. The Officer found nothing that resembled a weapon, but he felt a "bulge" in Blake's pants pocket. Believing it to be a plastic bag of marijuana, the Officer reached into Blake's pocket and seized the bag.
In concluding that the marijuana should have been excluded as the fruits of an improper search, the Illinois Court reasoned that the continued exploration of Blake's pocket after the officer knew that it did not contain a weapon exceeded the scope of a valid Terry frisk, and that the facts known to the officer at the time were insufficient to support a finding that probable cause existed to arrest Blake. Id., 206 Ill.Dec. at 578, 645 N.E.2d at 583; See also People v. Spann (1992), 237 Ill. App.3d 705, 178 Ill.Dec. 615, 604 N.E.2d 1138 (Tactile sensation of a soft powder did not give officer probable cause to arrest the defendant); Cf. People v. Mitchell (1993), 257 Ill. App.3d 157, 196 Ill.Dec. 516, 630 N.E.2d 451 (Officer's tactile perceptions made during a valid Terry stop and frisk provided him with information which, taken together with his previous observation of paraphernalia and his experience, gave him probable cause to arrest).
Application of the foregoing standards to the facts presently before us leads to a result in favor of C.D.T. The record reveals that during the course of the patdown search, Officer Andrews felt a "crumbled plastic baggie" in C.D.T.'s pants pocket. (R. 25). Because Officer Andrews knew that drugs are sometimes packaged in plastic bags, he reached into C.D.T.'s pocket and seized the bag. Officer Andrews then opened the outer bag and found a smaller blue bag inside. Upon opening the smaller blue bag and examining its contents, he found the cocaine. The record clearly indicates that at the time Officer Andrews seized the contraband, he had already satisfied himself that C.D.T. possessed no weapons. The following colloquy occurred on cross-examination:
Q. The purpose of the pat down was to search for any weapons, correct?
A. That's correct, sir.
Q. Weapons that might be a threat to you and others, correct?
A. Yes, sir.
Q. Did you recover any weapons?
A. No, sir, I didn't.
Q. Did you, in the course of your pat down, feel anything that you thought was a weapon?
A. Not that I recall at this time, sir.
(R. 29-30).
Q. Would it be true to say then, at the point when you patted on the baggie, you could not say one way or the other whether something was in the baggie?
A. No, sir, I could not 
Q. You could not tell?
A. I could not tell if it was full or empty.
Q. It could have been empty?
A. Could have been empty.
Q. Okay. So the contents, namely, the smaller, blue baggie and ultimately this off-whitish, colored rock, that was not determined until you actually went into the pocket and pulled out the baggie, correct?
A. Yes, sir.
(R. 32). On re-direct examination, Officer Andrews clarified his answers to say that once he felt the plastic bag, he immediately suspected contraband.
Q. I want to know what was in your mind at that exact instant that you  [felt the plastic bag].
A. Anytime I have encountered a small, plastic baggie on someone in the past, it has contained an illegal substance. *1047 So, in my mind, as soon as I hear and feel a plastic baggie in somebody's pocket, I automatically think of drugs.
Q. Now, you didn't know that for sure until you removed the bag?
A. Exactly.
Q. At that instant, that is what you believed it to be?
A. Exactly.
Q. Did you make any effort to manipulate or do anything with that thing you were feeling through the pants pocket?
A. No, sir.
(R. 33-34). On re-cross, the following transpired:
Q... . [A]t the time you touched the baggie, you could not tell physically whether or not anything was in it, correct?
A. I could tell that it was a plastic baggie.
Q. And that's it?
A. Yes, sir.
(R. 34-35).
We do not find Officer Andrews' abstention from intrusive manipulation of the plastic bag prior to the seizure as a dispositive fact. Rather, we find it far more significant that at the time of the seizure, Officer Andrews had already ascertained that C.D.T. possessed no harmful weapons. A protective Terry patdown for weapons must not go beyond that which is necessary to determine if the person being detained is armed. Terry does not permit the continuation of a curiosity search once an officer has dispelled his reasonable fear for his safety and the safety of others. The State has failed to meet its burden of proving that the incriminating character of the plastic bag was immediately apparent to Officer Andrews. The further intrusion of reaching into C.D.T.'s pocket and seizing the contraband was not justified under the Terry stop and frisk exception.
However, the inquiry does not end here. We must also consider whether prior to the seizure, Officer Andrews had probable cause to arrest C.D.T. based upon suspected possession of contraband. Dickerson, ___ U.S. at ___, 113 S.Ct. at 2137. "Probable cause to arrest depends upon whether, at the moment the arrest was made... the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had committed or is committing an offense." Adams v. Williams (1972), 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612; Johnson, 617 N.E.2d at 566.
Based on the facts known to Officer Andrews at the time, we cannot say that probable cause existed to support a full custodial arrest and a full physical search incident thereto.[4] Furthermore, a search which provides probable cause to arrest cannot be justified as a search incident to that arrest. Smith v. Ohio (1990), 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464; Johnson, 617 N.E.2d at 568. The Court in Dickerson discussed a useful analogy between the plain feel doctrine and the well-established plain view doctrine. The Court explained the plain view doctrine as follows:
[I]f contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no `search' within the meaning of the Fourth Amendment  or at least no search independent of the initial intrusion that gave officers their vantage point... . The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment.
*1048 Dickerson, ___ U.S. at ___, 113 S.Ct. at 2137 (citations omitted). Arizona v. Hicks (1987), 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347, a case which the Supreme Court decided under the plain view doctrine is particularly germane to the case before us. In Hicks, while executing a valid search warrant for particularized evidence, the police happened upon and seized some stolen stereo equipment. The Court held that although the police were lawfully conducting a search pursuant to a valid warrant, they did not possess probable cause to believe the stereo equipment was stolen until they lifted it up to look at the serial numbers, and thus the seizure was invalid. Hicks, 480 U.S. at 326-27, 107 S.Ct. at 1153-54. The Court explained that because the incriminating character of the stereo equipment was not immediately apparent, its seizure could not be justified under the plain view doctrine. Probable cause to believe that the equipment was stolen arose only after the officer seized the equipment, i.e. lifted it up to read the serial numbers. Id.
Similarly, here Officer Andrews' tactile sensation of "crumbled plastic" did not make the contraband's incriminating character immediately apparent. Rather, the fact that the plastic bag contained contraband was not known until after the seizure and further examination of the inner bags' contents. Furthermore, probable cause to arrest did not exist without the fruits of the search  which we are now deeming as inadmissible evidence.
C.D.T.'s detention did not rise to the level of a full-blown arrest and because the probable cause required for a full custodial arrest was lacking, we find that the seizure was not justified under any exception to the warrant requirement.

CONCLUSION
Based on the foregoing, we conclude that the investigative stop and patdown search were reasonable under Terry. However, Officer Andrews overstepped the bounds of a permissible Terry patdown search for weapons when he reached into C.D.T.'s pants pocket and seized the plastic bag, after he had ascertained that no dangerous weapons were on C.D.T.'s person and when probable cause for a full-blown arrest and search incident thereto was lacking.
Accordingly, we reverse and remand with instructions for the trial court to vacate C.D.T.'s delinquency adjudication.
DARDEN and BARTEAU, JJ., concur.
NOTES
[1] IND. CODE 35-48-4-6 (1993).
[2] The squad car had lights on the grill, on the deck, and a light on the dash. At the time of the stop, Officer Andrews was a member of a special drug unit.
[3] Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.
[4] The search incident to a lawful arrest is probably the most broad of the exceptions to the warrant requirement. Pursuant to a full custodial arrest, the arresting officer is permitted to search the arrestee in order to remove any weapons which may be used to resist arrest or escape. This is to ensure the officers' safety and to prevent the arrest from being frustrated. Additionally, the arresting officer may search for and seize any incriminating evidence on the arrestee's person in order to prevent its concealment and/or destruction. Chimel, 395 U.S. at 763, 89 S.Ct. at 2040.