Ricardo V. JACKSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A05–9512–CR–482.

Court of Appeals of Indiana.

July 23, 1996.

Mitchell W. Hicks,, Deputy Public Defender, Fort Wayne, for appellant–defendant.

Pamela Carter, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for appellee–plaintiff.

SHARPNACK, Chief Judge.

Ricardo Jackson appeals his convictions for possession of cocaine, a class D felony, and possession of marijuana, a class A misdemeanor. Jackson raises three issues for our review which we consolidate into the dispositive issue of whether the trial court abused its discretion by admitting evidence obtained as a direct result of an unlawful arrest. We reverse and remand.

### Facts

The facts most favorable to the judgment follow. In the early hours of December 27, 1995, Officers Scott Berning and Jay Thompson of the Fort Wayne Police Department were watching a known crack house on their routine patrol. The officers observed an individual leave the house, enter a car containing other passengers, and drive away. Because the license plate on the car was not illuminated, the officers stopped the car for the traffic infraction.

Upon approaching the car, both officers noticed Jackson in the back seat of the car making movements which led the officers to believe that he was trying to hide or move something. Officer Thompson ordered all of the passengers in the car to put their hands up where they could be seen. While the other passengers immediately complied, Jackson hesitated and then reluctantly complied with the order. However, Jackson kept his right hand clenched. The officers noticed that Jackson was holding money in that hand.

The officers requested identification from all of the passengers. The officers returned to their patrol car to write a traffic ticket for the driver and to perform warrant checks on all of the passengers. While the officers were in their patrol car, they observed Jackson take his hands down and move around as though he was trying to hide or reach something. The officers also noticed Jackson turning around and watching them through the car's rear window. The officers became suspicious and approached the car to ask Jackson to step out.

Officer Thompson ordered Jackson to put his hands on the car. Officer Thompson performed a patdown search "for officer's safety [and] weapons." Record, p. 104. During the search, Officer Thompson felt "some type of container in [Jackson's] pocket." Record, p. 105. Officer Thompson asked Jackson what the container was, and Jackson responded that it was his medicine. Because Officer Thompson believed that the container contained razor blades, he removed the container from Jackson's pocket. Through the partially transparent container, Officer Thompson could see a white chunky substance which he did not believe to be a prescription drug. Officer Thompson opened the container and saw a substance which was later identified as cocaine.

Next, Officer Thompson placed Jackson under arrest for possession of cocaine. Officer Berning then performed a search incident to that arrest. During that search, Officer Berning found a plastic bag containing a green leafy substance later determined to be marijuana. As a result, the officers also arrested Jackson for possession of marijuana.

After a bench trial on July 25, 1995, the trial court found Jackson guilty on both counts. The trial court later sentenced Jackson to three years for possession of cocaine and one and a half years for possession of marijuana, to be served concurrently. Jackson now appeals these convictions.

### Discussion

The dispositive issue for our review is whether the patdown search of Jackson prior to his arrest violated Jackson's right against unreasonable search and seizure. Jackson

claims the search exceeded the bounds of a lawful *Terry* search.[1]

The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Generally, a judicially issued search warrant is a condition precedent to a lawful search. *C.D.T. v. State*, 653 N.E.2d 1041, 1044 (Ind. Ct.App.1995). Thus, searches conducted "outside the judicial process" are *per se* unreasonable under the Fourth Amendment, subject to a few well delineated exceptions. *Thompson v. Louisiana*, 469 U.S. 17, 19–21, 105 S.Ct. 409, 410–411, 83 L.Ed.2d 246 (1984). The State has the burden of demonstrating the existence of one of these exceptions. *Chimel v. California*, 395 U.S. 752, 762, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685 (1969); *Fyock v. State*, 436 N.E.2d 1089, 1094 (Ind.1982).

One such exception to the warrant requirement is recognized in *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. In *Terry*, the Supreme Court held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot" the officer may briefly stop the suspicious person and make "reasonable inquiries" to confirm or dispel those suspicions. *Id.; see Minnesota v. Dickerson*, 508 U.S. 366, 372–73, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993).

In addition, a police officer "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," is entitled to conduct a limited patdown search of the suspect's outer clothing to search for a weapon. *Terry*, 392 U.S. at 24, 30, 88 S.Ct. at 1881, 1885. The purpose of the *Terry* search is not to discover evidence of a crime, but to allow the officer to pursue the investigation without fear. *Dickerson*, 508 U.S. at 373–75, 113 S.Ct. at 2136. When conducting this search, the officer need not be absolutely certain that

the individual is armed, but only that a reasonably prudent person in the same circumstances would be warranted in believing that the officer's safety was in danger. *Drake v. State*, 655 N.E.2d 574, 575 (Ind.Ct.App.1995). Thus, when the officer finds something that feels like a weapon during the patdown search, the officer can reach inside the clothing and remove the item to see whether it is in fact a weapon. *C.D.T.*, 653 N.E.2d at 1044.

However, the seizure of contraband detected during the lawful execution of a *Terry* search is also permissible if it remains within the parameters of the "plain feel" doctrine. *See Drake*, 655 N.E.2d at 576. The "plain feel" doctrine, adopted by the Supreme Court in *Dickerson*, evolved from the "plain view" doctrine which authorizes a police officer, lawfully in a position to view an object of contraband, to seize the object without a warrant if the incriminating character of the object is readily apparent. *Dickerson*, 508 U.S. at 375–77, 113 S.Ct. at 2137. Specifically, the Supreme Court held:

> "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity *immediately apparent*, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context."

*Id.* (emphasis added).

In *Dickerson*, police officers ordered the defendant to submit to a patdown search after the officers became suspicious because of the defendant's "seemingly evasive actions" and because the defendant had just left a crack house. *Id.* at 369, 113 S.Ct. at 2133. During the search, the officer found no weapons, but became interested in a small lump in the defendant's pocket. At trial, the officer testified that he felt the lump in the front pocket of the defendant's jacket and that he examined the lump with his fingers and determined it to be crack cocaine wrapped in cellophane. *Id.*

1.  *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20   L.Ed.2d 889 (1968).

The Supreme Court adopted the Minnesota Supreme Court's holding that the search was unconstitutional. The rationale for finding the search unconstitutional was because the officer concluded that the lump was contraband only after " 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." *Id.* at 378, 113 S.Ct. at 2138. Therefore, despite the officer's lawful right to place his hands on the defendant's jacket pursuant to the *Terry* exception, the fact that the object's incriminating character was not "immediately apparent" to the officer rendered the search outside the scope of *Terry* and thereby unconstitutional. *Id.* at 378–80, 113 S.Ct. at 2139.

■ Applying these principles to the present case, we find that the officers properly stopped the car and properly initiated a patdown search of Jackson. Further, we find that Officer Thompson properly removed the container from Jackson's pocket. We find, however, that Officer Thompson violated Jackson's fourth amendment rights when he seized the contents of the container, the identity of which was not "immediately apparent" to him.

■ First, the officers were clearly justified in stopping the car for the traffic infraction. *See Black v. State,* 621 N.E.2d 368, 370 (Ind.Ct.App.1993) (holding that police officers may stop vehicles when they observe minor traffic violations); *Walker v. State,* 527 N.E.2d 706, 708 (Ind.1988), *cert. denied,* 493 U.S. 856, 110 S.Ct. 161, 107 L.Ed.2d 118 (holding that taillight and license plate violations justify investigatory stop of automobile).

■ Second, the officers were justified in engaging in a limited *Terry* patdown to search for weapons. Officers Berning and Thompson testified that Jackson displayed suspicious behavior on two occasions. Initially, Jackson complied reluctantly with Officer Thompson's order for the passengers to put their hands up. Then, when the officers went to the patrol car to write a ticket, Jackson dropped his hands from view and acted suspiciously by looking back at the officers through the car's rear view window and moving around. Officer Berning testified that Jackson's conduct "made us wonder what he was doing, if he was trying to manipulate something, if he had a weapon he was trying to hide. We really weren't sure, it just led us to believe there was something wrong." Record, p. 64. Jackson's suspicious actions justified the initial search because a reasonably prudent person in similar circumstances would be warranted in believing the officers' safety was in danger. *See Drake,* 655 N.E.2d at 575. Therefore, the patdown search did not exceed the boundaries of *Terry.*

■ Next, when Officer Thompson felt a container in Jackson's pocket, which he believed could contain a razor blade, he was authorized to reach inside Jackson's pocket and check whether the container held a weapon. *See C.D.T.,* 653 N.E.2d at 1045. Officer Thompson testified that the purpose of the patdown search was to look for a weapon; "I felt a large container—or a small container, [which] could have contained razor blades at that time. I believed it could have, . . . I didn't know what was in the container." Record, p. 125. Based on these suspicions, the removal of the container from Jackson's pocket remained within the boundaries of a lawful search. *See C.D.T.,* 653 N.E.2d at 1044. Therefore, up through the point that Officer Thompson removed the container from Jackson's pocket, the search did not exceed the boundaries of Jackson's fourth amendment rights.

However, we must also consider whether the opening of the partially transparent container and the eventual seizure of the container's contents exceeded the limits of a lawful *Terry* search and seizure. Based upon our review of Officer Thompson's testimony, we find that the search exceeded those constitutional limits. Officer Thompson testified on direct examination as follow:

"Q  And what did you do, then, once you removed this container?

A  I removed it and I looked at it.

Q  What could you tell from looking at it?

A  It contained—well, it didn't have any label on it, so I didn't believe it was any type of prescription drug.

Q  Okay.

A  And it appeared that it had a white chunky substance in it.

Q  Okay. Did you look inside the container?

A  I did.

\*  \*  \*  \*  \*  \*

Q  Okay. And what did you see inside the container?

A  I saw a white chunky substance."

Record, pp. 111, 116. On cross-examination, Thompson testified that while the container was not completely transparent, he could see into the container.

■■■ At the point that Officer Thompson removed the container, he could see that it did not contain a weapon. At that instant, the officers were no longer faced with the threat of danger, and the lawful right to search Jackson without a warrant under *Terry* ended. "*Terry* does not permit the continuation of a curiosity search once an officer has dispelled his reasonable fear for his safety and the safety of others." *C.D.T.*, 653 N.E.2d at 1047.

Therefore, the only means to seize the contents in the container without a warrant was if the incriminating character of the contraband was readily apparent as required by the "plain view" doctrine. *See Dickerson*, 508 U.S. at 377–78, 113 S.Ct. at 2138. A close review of Officer Thompson's own testimony, however, "belies any notion" that the identity of the substance was immediately apparent to him. *See id.*

Officer Thompson testified that the partially transparent container did not have a label on it and, therefore, he believed that the container did not contain a prescription drug. He also testified that through the container he saw a white chunky substance. However, Officer Thompson never testified that he instantly recognized the substance as cocaine or that, from his six years of experience on the police force, he highly suspected that the substance was cocaine because of its appearance. Instead, he merely identified the char-

acteristics of the substance and testified that he "believed" the substance was not a prescription drug. This testimony was not enough to demonstrate that the incriminating nature of the substance was "immediately apparent" to Officer Thompson. *See C.D.T.*, 653 N.E.2d at 1047. Consequently, the State failed to prove that the search of the container fell within the scope of the "plain view" warrant exception. *Id.*

Moreover, a brief comparison of two recent cases supports our holding that the State failed to demonstrate that the incriminating nature of the contents was immediately apparent. In *Bratcher v. State*, 661 N.E.2d 828, 832 (Ind.Ct.App.1996), we upheld the seizure of marijuana when the police officer determined contemporaneously with his patdown search for weapons that the item was contraband. The officer testified that "right away I figured it was a bag containing marijuana." *Id.* Similarly, we upheld the admission of contraband into evidence when the police officer "instantly ascertained" the identity of the substance as cocaine during a patdown search for weapons. *Parker v. State*, 662 N.E.2d 994, 999 (Ind.Ct.App.1996), *trans. denied.*

Here, there is no similar testimony to indicate that Officer Thompson instantly recognized the substance as cocaine and, accordingly, the search falls outside the exception. Therefore, the further intrusion of opening the container was not justified and the seizure of the contraband was unconstitutional. *See C.D.T.*, 653 N.E.2d at 1047. As a result, the trial court erroneously admitted the cocaine into evidence.

■■■ Next, the possession of cocaine served as the basis for Jackson's arrest. After the arrest, Officer Berning conducted a search incident to the arrest for cocaine and found marijuana in Jackson's pocket. Because we find that opening the container and seizing the cocaine exceeded the boundaries of a lawful search, the subsequent search incident to the arrest and the seizure of the marijuana was likewise unconstitutional.

■■■ A search incident to arrest is where after an arrest, the officer conducts a warrantless search of the arrestee's person

and the area within the arrestee's immediate control. *Culpepper v. State*, 662 N.E.2d 670, 675 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* This type of search is an exception to the warrant requirement. This exception is narrowly tailored and designed to protect the police from danger and to prevent the destruction of evidence. *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040. To have a valid search incident to an arrest, the initial arrest must be lawful. *Culpepper*, 662 N.E.2d at 675; *Jones v. State*, 467 N.E.2d 1236, 1239 (Ind. Ct.App.1984). Probable cause to arrest is still required even though the circumstances fall within a warrant exception. *Culpepper*, 662 N.E.2d at 675. Probable cause for arrest exists where at the time of the arrest the officer has knowledge of facts and circumstances which warrant a man of reasonable caution to believe a suspect has committed the criminal act in question. *Id.*

■■■ An unlawful arrest cannot be the foundation of a lawful search. *Regan v. State*, 590 N.E.2d 640, 644 (Ind.Ct.App.1992). In fact, evidence which is the product of an unlawful detention or an illegal arrest is inadmissible. *Id.* Evidence obtained as a direct result of a search conducted after an illegal arrest is excluded under the fruit of the poisonous tree doctrine. *See Cain v. State*, 594 N.E.2d 835, 838–839 (Ind.Ct.App. 1992), *reh'g granted on other grounds*, 599 N.E.2d 625.

■■■ Based on our review of the facts known to the officers at the time, we cannot say that probable cause existed to support an arrest for possession of cocaine and a full physical search incident thereto. *See C.D.T.*, 653 N.E.2d at 1047. Prior to stopping the car for the traffic infraction, the officers knew only that an individual who entered the car had just emerged from a known crack house. The officers did not know whether that individual was Jackson. After the car was stopped, Jackson made suspicious movements and clenched money in his hand. This evidence does not rise to the level of probable cause necessary to arrest Jackson for possession of cocaine. Probable cause to believe that Jackson committed a crime would become apparent only after Officer Thompson identified the substance as cocaine. In this case, the substance was not identified as cocaine until after the search had become unlawful. Thus, probable cause to arrest did not exist without the "fruits of the search—which we are now deeming as inadmissible evidence." *Id.* at 1048. Accordingly, the arrest was unlawful.

Because the arrest for possession of the cocaine was unlawful, the subsequent search incident to that arrest was improper. As a result, the seizure of the marijuana, which was discovered during the search, was unconstitutional. Accordingly, the trial court erred by admitting the marijuana into evidence. *See Cain*, 594 N.E.2d at 838–839.

■■■ A fourth amendment error is subject to constitutional harmless error analysis. *Esquerdo v. State*, 640 N.E.2d 1023, 1030 (Ind.1994). If we can state beyond a reasonable doubt that the improperly admitted evidence did not contribute to the verdict, then the error is harmless. *Id.* Here, the only evidence of the possession charges was the evidence of the cocaine and the marijuana improperly seized from Jackson. This evidence clearly induced the convictions. Therefore, we cannot say that the admission was harmless beyond a reasonable doubt. *Id.*

For the foregoing reasons, we reverse the convictions and remand this cause to the trial court.

REVERSED AND REMANDED.

KIRSCH and BARTEAU, JJ., concur.